UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:15-CV-81685-MIDDLEBROOKS/BRANNON

THE PRINCETON EXPRESS AND
SURPLUS INSURANCE COMPANY,

      Plaintiff,

v.

DM VENTURES USA LLC, d/b/a DIRTY
MARTINI; THE DIRTY MARTINI GRILLE,
LLC, d/b/a DIRTY MARTINI; PAWN SHOP
LOUNGE PALM BEACH, INC.; THE PAWN
SHOP LOUNGE PALM BEACH, LLC, d/b/a
THE PAWN SHOP LOUNGE; EVA PEPAJ;
TIFFANY TOTH; JESSICA HINTON; BROOKE
JOHNSON a/k/a BROOKE TAYLOR; JESSE
GOLDEN; DANIELLE RUIZ; JENNIFER
ZHARINOVA; and PAOLA CANAS,

      Defendants.
_____/

## ORDER ON PRINCETON'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

THIS CAUSE comes before the Court on a Motion for Partial Judgment on the Pleadings ("Motion") filed by The Princeton Excess and Surplus Lines Insurance Company ("Princeton"). (DE 27). DM Ventures USA LLC d/b/a Dirty Martini, the Dirty Martini Grille, LLC d/b/a Dirty Martini, and the Pawn Shop Lounge Palm Beach, LLC d/b/a the Pawn Shop Lounge[1] (collectively "Dirty Martini") (DE 31) responded to the Motion.[2] Princeton's Motion is fully briefed. (DE 33, 40, 47).

---

[1] Dirty Martini's response does not purport to be brought on behalf of Pawn Shop Lounge Palm Beach, Inc. It is unclear whether this was intentional or not. I do note, however, that Pawn Shop Lounge Palm Beach, Inc. is not named as a defendant in the Underlying Action.

[2] In its response, Dirty Martini purported to cross move for judgment on the pleadings on its Counterclaim. Dirty Martini's cross-motion was not properly filed as it was combined with its response to Princeton's Motion, and is not docketed as a motion. Additionally, it is not the mirror

## BACKGROUND

This declaratory judgment action stems from a lawsuit brought by eight models against Dirty Martini in the Circuit Court of the 15th Judicial Circuit of Palm Beach County, Florida, and which has since been removed to federal court, 15-cv-81724-DTKH ("Underlying Action"). The models claim that the Dirty Martini Defendants used the models' photographs on Dirty Martini's websites, social media, flyers, posters, and other forms of advertisements to promote Dirty Martini and the Pawn Shop Lounge. The models allege Dirty Martini did not have authorization to use their photographs. In the operative complaint, the models allege twelve claims: (1) violation of the Lanham Act, 28 U.S.C. § 1125(a)(1); (2) unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08; (3) common law invasion of privacy-misappropriation; (4) civil theft; (5) common law conversion; (6) violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (7) unfair trade competition; (8) defamation; (9) fraudulent misrepresentation; (10) unjust enrichment; (11) negligence and respondeat superior; and (12) negligence.

Princeton brought this declaratory judgment action seeking a determination as to whether commercial general liability insurance policies issued by Princeton to Dirty Martini require Princeton to defend and indemnify Dirty Martini in the Underlying Action. (DE 15, "Compl.").[3] Through

---

image of Princeton's Motion as it goes beyond the issues raised in that Motion. The sole issue in Princeton's Motion is whether the Field of Entertainment Exclusion precludes it from defending or indemnifying Dirty Martini in the Underlying Lawsuit. Dirty Martini's Counterclaim, to which Princeton has asserted affirmative defenses, seeks a declaration that Princeton has a duty to defend and indemnify in that Lawsuit. Princeton's affirmative defenses raise other exclusions and defenses, which the Parties have not briefed. Accordingly, I do not consider Dirty Martini's cross-motion for judgment on the pleadings.

[3] There are two policies at issue here: (1) Policy number 1RA3GL0000064-01, with Named Insured Pawn Shop Lounge Palm Beach Inc. (Policy Period: 6/10/2015 – 6/10/2016) and (2) Policy number 1RA3GL0000098-01, with Named Insured DM Ventures USA LLC DBA DIRTY MARTINI (Policy

Count I, Princeton seeks a declaration that the Field of Entertainment Exclusion precludes the duty to defend or indemnify Dirty Martini for the claims in the Underlying Lawsuit. (Compl. at Count I). Dirty Martini filed a counterclaim, requesting declaratory relief that Princeton has a continuing duty to defend and indemnify Dirty Martini under one or more of the policies. (DE 11). The instant Motion seeks judgment on the pleadings as to Count I of Princeton's Complaint.

## STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted). *See also Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). The pleadings considered by the court on a motion for judgment on the pleadings include the complaint, answers, and the exhibits thereto. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

## DISCUSSION

**Ripeness.** Dirty Martini argues that Princeton's Motion is not ripe because the deadline to amend the pleadings in the Underlying Action is March 16, 2016, which was nine days after Dirty Martini filed its response. (DE 31 at 14). The deadline to amend pleadings in the Underlying Action

---

Period: 8/1/2015 – 8/1/2016). Because the relevant policy provisions are identical, I will refer to them as policies.

3

has since passed. Accordingly, Princeton's Motion is ripe.

**Applicable Law.** Florida law applies to this action because jurisdiction is based on diversity. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). To determine whether an insurer has a duty to defend, the Court looks only to the allegations in the underlying complaint and the terms of the policy. *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005). If the allegations in the underlying complaint do not establish coverage, there is no duty to defend. *Posigian v. Am. Reliance Ins. Co. of New Jersey*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989). "[I]f the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003).

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application thereof or any rider or endorsement thereto." Fla. Stat. § 627.419. Under Florida law, a clear and unambiguous policy provision "should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (citing *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). If a coverage exclusion provision is ambiguous, the provision should be construed in favor of the insured. *Deni Assoc. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998). A provision is ambiguous if, "after resort to the ordinary rules of construction, the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Interline Brands*, 749 F.3d at 965. However, a provision is not ambiguous merely because it requires analysis to interpret it. *Id.* (citing *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 31 (Fla. 2d DCA 2004)). As the

4

Eleventh Circuit has explained:

> [S]imply because one provision gives a general grant of coverage and another provision limits this coverage does not mean there is an ambiguity or inconsistency between the two. This is the very nature of an insurance contract; exclusions in coverage are expressly intended to modify coverage clauses and to limit their scope.

*Ajax Bldg Corp. v. Hartford Fire Ins. Co.*, 358 F.3d 795 (11th Cir. 2004) (applying Florida law).

The party claiming coverage, here, Dirty Martini, generally bears the burden of proof to establish that coverage exists. "In Florida, once the insured establishes a loss apparently within the terms of an insurance policy, the burden shifts to the insurer to prove that the claim is excluded from coverage under an applicable exception." *Aspen Specialty Ins. Co. v. River Oaks of Palm Beach Homeowner's Ass'n, Inc.*, No. 11-81380, 2012 WL 3260398 (S.D. Fla. Aug. 8, 2012) (citing *Hudson v. Prudential Property & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d DCA 1984)). Thus, Princeton must prove that the claim is excluded from coverage.

**Policies.** The policies at issue are surplus lines insurer's policies, and are commercial general liability ("CGL") policies. The CGL policies are comprised of three parts: "Coverage A Bodily Injury and Property Damage," "Coverage B Personal and Advertising Injury," and "Coverage C Medical Payments." There are also endorsements to the policies.

Dirty Martini seeks coverage under Coverage B of the policies, and Princeton believes that Coverage B is the only potential coverage implicated by the complaint in the Underlying Action. (DE 31 at 3); (DE 27 at 6). Coverage B provides, in part:

> Section I – Coverages, Coverage B Personal and Advertising Injury, 1. Insuring Agreement a.:
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those

5

> damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(DE 15-3 at 9; DE 15-4 at 9).

"Personal and advertising injury" is defined in the Definitions section:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(DE 15-3 at 18; DE 15-4 at 18). Advertisement is defined in Section V-Definitions as:

> "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
> > a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
> > b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

(DE 15-3 at 16; DE 15-4 at 16).

An endorsement entitled "General Policy Changes" is attached to the policies and contains the Field of Entertainment Exclusion ("Exclusion"), which provides, in part:

> EXCLUSION- FIELD OF ENTERTAINMENT
> This insurance does not apply to any loss, claim, "suit", cost, expense, or liability for damages, directly or indirectly based on, attributable to, arising out of, involving,

> resulting from or in any way related to:
> a. Actual or alleged activity which is claimed to be an intellectual property infringement or violation of any of the following rights or laws: copyright, patent, trade dress, trade secrets, trade name, trademark or service mark;
> b. Actual or alleged invasion of privacy;
> c. Actual or alleged libel, slander, or any form of defamation;
> d. Actual or alleged unauthorized use of titles, slogans, names, formats, ideas, characters, artwork, theme, plots or other material;
> e. Actual or alleged infringement of copyright or common law rights in literary, artistic or musical material, or actual or alleged infringement of literary, artistic or musical rights codes;

(DE 15-3 at 49; DE 15-4 at 49).

**Parties' Positions.** Dirty Martini seeks coverage based on the allegations in the Underlying Action under Coverage B Personal and Advertising Injury. Princeton, however, argues that all of the models' allegations fall under the Field of Entertainment Exclusion and thus it has no duty to defend or indemnify Dirty Martini in the Underlying Action. Dirty Martini argues that the Field of Entertainment Exclusion excludes entire categories of coverage that were specifically provided for in the policy and, therefore, creates an ambiguity that must be interpreted in favor of coverage. Dirty Martini also argues that the Exclusion makes coverage illusory and is, therefore, ineffective.

**Analysis.** Dirty Martini argues that because the policy provides coverage for advertising injury and then deletes coverage for advertising injury through an exclusion, the policy is ambiguous and must be construed in favor of coverage. In support, Dirty Martini relies on *Purrelli v. State Farm Fire and Cas. Co.*, 698 So. 2d 618 (Fla. 2d DCA 1997). There, the court found that "Purrelli's umbrella liability policy with State Farm is ambiguous because the policy purports to provide coverage for specified intentional torts, including invasion of privacy, but attempts to limit coverage to accidents and exclude intentional acts." *Id.* at 621. The court indicated that an insurance policy that provides coverage for specifically enumerated intentional torts, but only if they are committed

unintentionally, is "complete nonsense." *Id.* at 620. The court reversed the trial court's order granting judgment on the pleadings in favor of State Farm.

Here, the types of personal and advertising injuries that are covered in the policies are injuries arising out of the following:

> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(DE 15-3 at 18; DE 15-4 at 18). The Parties agree that, as written, the Field of Entertainment Exclusion excludes coverage for injuries arising out of anything listed in (d) through (g) listed under Personal and Advertising Injuries. (DE 27 at ¶ 30); (DE 31 at 2). Thus, the Parties do not dispute the scope of the Exclusion and agree that the Exclusion directly contradicts the coverage for advertising injury. Instead, the Parties dispute whether the Exclusion should apply as written in light of the inconsistency between the coverage and exclusionary provisions.

Dirty Martini argues that the Exclusion is ineffective because it makes coverage illusory. Under Florida law, insurance coverage is illusory when policy provisions, limitations, or exclusions completely contradict the insuring provisions. *Colony Ins. Co. v. Total Contracting & Roofing, Inc.*, No. 10-23091-CIV, 2011 WL 4962351, at *5 (S.D. Fla. Oct. 18, 2011). *See also First Mercury Ins. Co. v. Sudderth*, 620 F. App'x 826, 830 (11th Cir. 2015) ("Coverage in one part of an insurance

policy is illusory when an exclusion in another part completely nullifies the coverage. . . . Exclusions that make coverage illusory are ineffectual."); *Purrelli* (noting that "[w]hen limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory"); *Tire Kingdom v. First Southern Ins. Co.*, 573 So. 2d 885, 887 (Fla. 3d DCA 1990) ("An insurance policy cannot grant rights in one paragraph and then retract the very same right in another paragraph called an 'exclusion.'").

Princeton attempts to distinguish several of the cases relied on by Dirty Martini by arguing that the Exclusion here is contained in an endorsement. Princeton argues that "the Field of Entertainment Exclusion, since it is contained in an endorsement, controls over any language within the policies." (DE 33 at 2) (citing *Steuart Petroleum Co., Inc. v. Certain Underwriters at Lloyd's London*, 696 So. 2d 376, 379 (Fla. 1st DCA 1997) ("[I]n general, to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls.")). For instance, Dirty Martini correctly notes that *Purrelli* did not involve an endorsement. (DE 33 at 5).

In response, Dirty Martini cites to *Hooters of Augusta, Inc. v. American Global Ins. Co.*, 157 F. App'x 201 (11th Cir. 2005). There, the Eleventh Circuit, applying Georgia law, found that an endorsement that purported to exclude advertising injury was ineffective where a coverage provision provided for advertising injury. The insured sought defense and coverage in an lawsuit based on sending faxes in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Despite the policy providing that advertising injury was covered, the insurer sought to deny coverage based on an endorsement that excluded any advertising injury claim related to publishing-related activities, which it contended included the fax campaign. The insured argued that "Georgia law would grant the exclusionary endorsement precedence over conflicting terms in the policy, as it

would do with an endorsement adopted at a later time, *see Utica Mut. Ins. Co. v. Dunn*, 106 Ga. App. 877, 129 S.E. 2d 94, 96 (1962) (holding that an endorsement adopted at a later date takes precedence over the original policy terms because it reflects a later expression of intent)." *Id.* The Eleventh Circuit rejected the insured's argument:

> When an endorsement is entered at the same moment as the policy it accompanies, rather than at a later time, and the endorsement purports to obliterate coverage, as opposed to merely clarifying, narrowing, or modifying the terms of coverage, we believe the approach more consistent with Georgia law is to read the endorsement and the terms of the policy as being coequal and thus to enforce the provision that grants coverage. . . . Through the lens of this state policy, granting coverage and simultaneously sweeping it away through another provision entered at the same time seems to pose the same risk to the purchaser regardless of whether the exclusion clause appears within the insurance policy itself or within an endorsement.

*Id.* at 209-10. The Eleventh Circuit construed the policy in favor of coverage: "the approach more consistent with Georgia law is to read the endorsement and the terms of the policy as being coequal and thus to enforce the provision that grants coverage." *Id.* at 210.

In reply, Princeton argues *Hooters* is inapplicable because it applies Georgia law. Princeton has not cited to, and the Court is unaware of, any cases in which a court ignored Florida's prohibition of illusory coverage simply because the exclusion was in an endorsement.[4] Additionally, despite Princeton's argument that *Hooters* is unhelpful because it applies Georgia law, there is no indication that Florida has a different rule than Georgia on endorsements. In Georgia, just as in Florida, where an endorsement is inconsistent with the body of the policy, the endorsement generally controls. *See B.L. Ivey Const. Co. v. Pilot Fire & Cas. Co.*, 295 F. Supp. 840, 848 (N.D. Ga. 1968) ("In such a

---

[4] Other courts applying Florida law have considered whether exclusions contained in endorsements rendered coverage illusory, without identifying a distinction based on the exclusion being labeled an endorsement. *See, e.g., TIG Ins. Co. v. Smart School*, 401 F. Supp. 2d 1334 (S.D. Fla. 2005) (rejecting argument that sexual abuse endorsement made CGL policy illusory for other reasons).

10

case the terms of the endorsement must apply, for it is a general principle of wide application in Georgia that when an endorsement or rider and a policy conflict, the former controls the latter, since it is a later expression of intent."). Despite that general principle, the Eleventh Circuit in *Hooters* still found that an exclusion contained in an endorsement created an ambiguity that must be construed in favor of coverage. Thus, Princeton has not convinced me that Florida would treat exclusions any differently simply because they are labeled as endorsements.

Princeton also relies on the Eleventh Circuit's decision *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, which applies Florida law. 749 F.3d 962 (11th Cir. 2014). In *Interline Brands*, the policy provided coverage for personal and advertising injury. *Id.* at 964. The policy also included an exclusion for "violation of statutes in connection with sending, transmitting or communicating any material or information." *Id.* The insured sought coverage under the policy for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq. Id.* The insurer relied on the exclusion to deny coverage. *Id.* The Eleventh Circuit rejected the insured's argument that the exclusion violated public policy because it was illusory, explaining

> Interline overstates the extent to which the Exclusion limits coverage. Even with the broad Exclusion, the policy still contains extensive coverage. The policy provides a wide range of coverage for bodily injury and property damage liability, personal and advertising injury liability, medical payments, and pollution legal liability. The Exclusion only applies to the personal and advertising injury coverage. Furthermore, the Exclusion only excludes from coverage violations of a statute, ordinance, or regulation (i.e. not common law) and only in relation to "sending, transmitting or communicating of any material or information." While this is a significant Exclusion (especially in light of Interline's business), it does not render the policy absurd or completely contradict the insuring provisions.

*Id.* at 967.

Unlike the policy in *Interline Brands*, the Exclusion here essentially eliminates all advertising

injury coverage. Because the policies provide that they cover advertising injury, and then the Exclusion provides that advertising injury is excluded, the provisions are completely contradicted. The Exclusion does not carve out a particular type of advertising injury – such as those that violate a statute as in *Interline Brands* – but, instead, excludes all advertising injury. Giving effect to the Exclusion would make the advertising injury coverage illusory, which is prohibited by Florida law. *See Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1318 (S.D. Fla. 2015) (refusing to apply watercraft exclusion to policy that provided coverage for parasailing because doing so would "render the policy illusory").

## CONCLUSION

Accordingly, Princeton has not demonstrated that the Field of Entertainment Exclusion precludes Princeton from having a duty to defend or indemnify Dirty Martini in the Underlying Action.

**It is ORDERED AND ADJUDGED:**

(1) Princeton's Motion for Partial Judgment on the Pleadings (DE 27) is **DENIED**.

(2) The Parties are required to file a Joint Status Report by **July 25, 2016**, explaining the status of this case, what issues remain to be determined by the Court, and a proposed schedule for resolving any remaining issues.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this __ day of July, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record